On petitioner's petition for reconsideration filed December 18, and respondent Hank Westbrook's response to petition for reconsideration filed December 23, 2002, petition for reconsideration allowed; former opinion (185 Or App 233, 59 P3d 50 (2002)) clarified and adhered to as clarified March 6, 2003

Carol N. DOTY,
*Petitioner,*

*v.*

COOS COUNTY
and Hank Westbrook,
*Respondents.*

2001-202; A118190

64 P3d 1150

Douglas M. DuPriest and Hutchinson, Cox, Coons, DuPriest, Orr & Sherlock, P.C., for petition.

Daniel A. Terrell and Law Office of Bill Kloos, PC, for respondent Hank Westbrook, *contra.*

No appearance for respondent Coos County.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

DEITS, C. J.

**DEITS, C. J.**

Petitioner petitions for reconsideration of our former opinion in *Doty v. Coos County*, 185 Or App 233, 59 P3d 50 (2002). In her petition, she makes two arguments. First, petitioner argues that we incorrectly concluded that she did not argue before the Land Use Board of Appeals (LUBA) that the comprehensive plan map *must* control if it is inconsistent with the zoning map. Second, petitioner argues that we incorrectly concluded that she failed to explain why her challenge to the planning director's 1996 interpretation of the zoning map is cognizable on review. We allow the petition for reconsideration but write only to address petitioner's first argument. We clarify our former opinion and adhere to that opinion as clarified.

In our former opinion, we stated that

"LUBA found that the boundary line drawn on the zoning map reflected the director's interpretation of the [Coastal Shorelands Boundary (CSB)] at the time of the 1996 partition. LUBA noted, however, that the planning director did not also revise the map included in the [Coquille River Estuary Management Plan (CREMP)]. In other words, the plan map and the zoning map were inconsistent after the director's 1996 interpretation. In its opinion, LUBA stated that petitioner attached no significance to the planning director's omission."

*Doty*, 185 Or App at 238. On review, petitioner contended, relying on *Baker v. City of Milwaukie*, 271 Or 500, 533 P2d 772 (1975), that the comprehensive plan map is the controlling document and that, accordingly, in this case, the CREMP plan map controls over inconsistent provisions in the zoning map. The problem with petitioner's contention was that she did not make that legal argument before LUBA. Thus, we concluded that "LUBA is correct that petitioner never argued before it that, in the case of a conflict, the plan map prevails." *Doty*, 185 Or App at 239.

On reconsideration, petitioner contends that our conclusion was incorrect. She argues that she repeatedly asserted before LUBA that the policies in the CREMP, a plan that is part of the county's comprehensive plan, applied to the

subject property. The CREMP limits the types of uses that may be conducted in each shorelands segment. There is no question that petitioner did assert before LUBA that CREMP policies controlling uses on lands within "Shorelands Segment 16" applied to the subject property. There is also no question that Westbrook responded that the CREMP's limitations on use applied to only a two and one-half acre portion of the subject property. Westbrook also cited the county's zoning map in support of his argument. Accordingly, LUBA's resolution of this case involved the issue of the location of the CSB.

LUBA requested a copy of the official zoning map, and the county provided a copy. Petitioner filed a response in which she cited portions of the record before LUBA that treated the CREMP overlay as applicable to the subject property. She did not, however, attack the zoning map as incorrect, rely on *Baker* for the proposition that the zoning map could not be used to establish the boundary because it was inconsistent with the CREMP map, or assert that the zoning map reflected an improper exercise of the planning director's authority. Instead, she directed LUBA to an appendix to her brief before LUBA, which included a portion of the official zoning map showing the subject property, the planning director's line on the property, and the notation regarding the director's interpretation. Petitioner argued that, when the planning director interpreted the boundary, she "decreased the size of the Shorelands Segment 16. But she didn't remove the CREMP zoning; it was there." Petitioner also argued that the map that the applicant included in the application was not an official map.

As we understand her comments, petitioner asserted that the line as drawn by the planning director supported her view of the location of the CSB. In other words, petitioner's argument before LUBA *relied* on the zoning map. Consequently, petitioner's arguments, fairly read, did not advise LUBA that she was attacking the validity of the zoning map as the planning director interpreted it. At most, her comment that the planning director "didn't remove the CREMP zoning; it was there" addresses the placement of the boundary line, not the efficacy of the zoning map to establish the boundary. Even if petitioner intended to illustrate an

inconsistency between the zoning map and the CREMP map, her arguments did not offer LUBA a legal basis upon which it might conclude that the official zoning map should be disregarded.

Given petitioner's arguments, LUBA was understandably under the impression that petitioner was not asserting that the zoning map could not be used to establish the boundary. Thus, LUBA correctly concluded that petitioner attached "no significance" to the fact that the planning director did not revise the CREMP map. Consequently, we adhere to the conclusion in our former opinion that petitioner may not assert on review that LUBA erred in relying on the official zoning map.

Petition for reconsideration allowed; former opinion clarified and adhered to as clarified.